## UNITED STATES

v.

**Senior Airman Carole L. LUKUS, FR 209–62–6297, United States Air Force.**

**ACM S27809.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 18 March 1988.

Decided 29 July 1988.

Appellate Counsel for the Appellant: Colonel Leo L. Sergi and Lieutenant Colonel Patrick C. Sweeney.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni and Major Kathryn I. Taylor.

Before HODGSON, FORAY and HOLTE, Appellate Military Judges.

## DECISION

HODGSON, Chief Judge:

On 15 December 1987, the appellant was selected to participate in a random urinalysis inspection which disclosed the presence of benzoylecognine *, a metabolite of cocaine, in her urine as confirmed by two separate testing laboratories using radioimmunoassay and gas chromatography/mass spectometry analysis. The results of these tests together with the testimony of a board certified expert witness in forensic toxicology formed the basis of the prosecu-

---

* The appellant's urine sample contained 1,006 nanograms per milliliter(ng/ml) of the cocaine

tion's case. This expert witness explained the tests that were used and the relationship between the presence of benzoylecognine metabolites in urine and the prohibited substance, cocaine.

On direct examination the appellant denied "knowingly using cocaine" on 14 December 1987, and stated she had no idea what occurred on that date that led to a positive test result. She also testified that the morning of the 14th she was asked by her commander to give a urine sample which she did. She was later told that the test results were "negative." Actually, as established during the government's case in rebuttal, the appellant's urine specimen given on 14 December contained 100–125 nanograms per milliliter(ng/ml) of benzoylecognine but was reported as "negative" because it was below the 300 ng/ml cutoff that the Department of Defense requires for determining a sample positive by radioimmunoassay analysis. *See United States v. Burris*, 25 M.J. 846, 847 Note 1 (A.F.C.M.R.1988).

The 14 December consensual urinalysis was further discussed by Doctor John D. Whiting, forensic chemist employed by TOXICHEM Laboratories, Gaithersburg, Maryland. In response to questioning on direct examination by the trial defense counsel, Doctor Whiting testified that it was highly unlikely that a cocaine ingestion prior to the first urinalysis which resulted in a 100–125 ng/ml reading would show up positive at a 1,006 ng/ml level some 24 hours later. It was Doctor Whiting's opinion that the cocaine "exposure would have [had] to occur sometime in that 24 hour time frame between the first test and the second test." On cross-examination Doctor Whiting acknowledged that the RIA screening test is extremely sensitive, i.e., down to 5 ng/ml, and further he was not aware of any compound that cross-reacts with the RIA test to produce a false positive for cocaine metabolites.

Over defense objection, the trial judge permitted the prosecution to inquire into

metabolite.

the circumstances of the 14 December "negative" urinalysis as rebuttal evidence to the testimony of the appellant and Doctor Whiting. It is this ruling that the appellant challenges on appeal. Her challenge is threefold: 1) The 14 December test result was irrelevant as it did not make her knowing use of cocaine on that date any more or less probable; 2) The test result was admitted in violation of Mil.R.Evid. 608(b) which prohibits the introduction of specific instances of conduct to attack the credibility of a witness; and 3) The test was inadmissible because it lacked scientific accuracy. This last assertion is undercut considerably by the testimony of Doctor Whiting, a defense witness, who stated that the RIA screening test was "extremely sensitive," and not subject to false positive readings as the result of contaminants.

The subject matter to which the rebuttal evidence relates was interjected into the appellant's case-in-chief through her direct testimony and that of her expert witness, Doctor Whiting. It is well-established that a party who has brought out evidence on a certain subject has no valid complaint because the trial judge allows the opposing party to introduce evidence on the same subject. The doctrine of "opening the door" or the concept of "curative admissi-bility" permits the admission of evidence that might otherwise be excluded to rebut evidence of like character. *United States v. Hall,* 653 F.2d 1002 (5th Cir.1981); *United States v. Lum,* 466 F.Supp. 328 (D.C. Del.1979), *aff'd,* 605 F.2d 1198 (3d Cir. 1979); *Jenkins v. United States,* 374 A.2d 581 (D.C.App.1977), *cert. denied,* 434 U.S. 894, 98 S.Ct. 274, 54 L.Ed.2d 182 (1977). As earlier discussed, it was the appellant who introduced the existence of a "negative" urinalysis into evidence. Having done so, the prosecution is entitled to correct any false impressions created by the admission of that evidence. *United States v. Johnson,* 20 M.J. 610 (A.F.C.M.R.1985). The trial judge correctly admitted the evidence offered by the government in rebuttal. For the reasons stated, the findings of guilty and the sentence are

AFFIRMED.

Senior Judge FORAY and Judge HOLTE concur.